COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


JOSEPH WAYNE SUGGS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1459-05-2                      JUDGE SAM W. COLEMAN III
                                                         MARCH 28, 2006
SUGGS CARPET INSTALLATION AND
 HARTFORD CASUALTY INSURANCE COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Jean M. McKeen (Fitzgerald, Tomlin & McKeen, on briefs), for
              appellant.

              S. Vernon Priddy III (Sands, Anderson, Marks & Miller, on brief),
              for appellees.


      Joseph Wayne Suggs (claimant) appeals a decision of the Workers' Compensation

Commission finding that (1) Suggs Carpet Installation and its insurer are entitled to reduce

payments of claimant's future compensation and medical benefits pursuant to Code § 65.2-313,

until employer recoups $25,000 (the gross recovery obtained by claimant as a result of a

third-party settlement); and (2) employer is not responsible for the cost of a hot tub installed at

claimant's residence.  For the following reasons, we affirm the commission's decision.

                                       Background

      On January 5, 1995, claimant sustained neck and back injuries resulting from a

compensable motor vehicle accident.  The commission awarded claimant temporary total

disability benefits in the amount of $466 per week from January 5, 1995 through August 16,

1995, and beginning March 22, 1997 and continuing.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On December 10, 1998, claimant settled a claim against a third party involved in the motor vehicle accident for $25,000. Claimant's counsel in the third-party case and his previous counsel in this matter deposited on October 22, 2002, with the Henrico County Circuit Court $17,500, the funds from the third-party settlement less attorney's fees and costs. Claimant then requested through interpleader that the circuit court determine the disbursement of the $17,500. The employer's insurer was a party named in the interpleader. The insurer filed an answer and a cross-bill seeking the entire $17,500, based on its subrogation rights. As of December 2003, the insurer had paid claimant compensation benefits of $167,036 and medical expenses of $27,749.

At a hearing in the circuit court, the insurer admitted that it had not perfected its subrogation lien pursuant to Code § 65.2-310. The circuit court entered an order dismissing the insurer's cross-bill for failure to perfect its lien under Code § 65.2-310. In so ruling, the circuit court relied upon Yellow Freight, Sys., Inc. v. Courtaulds Performance Films, Inc., 266 Va. 57, 580 S.E.2d 812 (2003). The circuit court ordered payment of another party's lien and disbursement of the remaining funds to claimant.

Employer then filed an application with the commission seeking termination of claimant's outstanding award based upon his recovery from the third-party settlement. When a senior claims examiner found probable cause to refer the matter to the docket, claimant requested review of that finding. The commission affirmed the senior claims examiner's decision to refer employer's application to the docket. The commission ruled that although the circuit court found that the insurer failed to perfect its subrogation lien on the settlement proceeds from the third-party action, the doctrine of *res judicata* did not bar the employer's application because it sought a reduction of future benefits under Code § 65.2-313, a remedy separate from that provided in Code §§ 65.2-309 and 65.2-310.

Following an evidentiary hearing, the deputy commissioner ruled that while employer did not preserve its subrogation lien under Code § 65.2-310, it did have the right of incremental recovery from future benefits under Code § 65.2-313, which provides the formula for determining the percentage of attorney's fees and costs to be borne by claimant and employer from the third-party recovery. The deputy commissioner found that the appropriate ratio to be applied to future compensation and medical benefits was total attorney's fees and costs divided by gross recovery ($7,500.00/$25,000.00), or thirty percent.

The deputy commissioner also rejected claimant's claim that a hot tub installed at his residence constituted reasonable, necessary, and causally related medical treatment. He ruled that employer was not responsible for the cost of the hot tub installed at claimant's home in 1998.

In affirming in part and reversing in part the deputy commissioner's decision, the commission ruled that in Hawkins v. Southside Virginia Training Ctr., 255 Va. 261, 497 S.E.2d 839 (1998), the Supreme Court implied that "Code § 65.2-313 creates the right to the offset and dictates the calculation of the credit." The commission also relied upon our holding in McKnight v. Work Env't Assocs., Inc., 43 Va. App. 189, 596 S.E.2d 573 (2004), and it suggested we "reasoned that because the employee received a recovery from the settlement and received benefits from the workers' compensation insurer, the employer . . . was entitled to an offset to prevent a double recovery." The commission concluded that the requirements of Code § 65.2-313 had been met in this case and that

> to prevent a double recovery, and consistent with McKnight, the employer is entitled to reduce the amount paid toward further entitlement:
>
> "equal to the ratio the total attorney's fees and costs bear to the total third-party recovery until such time as the accrued post-recovery entitlement equals the sum which is the difference

between the gross recovery and the employer's compensation lien."

(Quoting Code § 65.2-313.) The commission ruled "that the right to a reduction of future entitlements is not dependent on the employer's perfection of its lien, and exists separately as an additional measure to prevent a double recovery."

With respect to the calculation of the reduction, the commission found that employer had paid claimant $167,036 in disability benefits and $27,749 for medical expenses as of the date of the circuit court hearing. The commission noted employer received nothing from the total proceeds of the settlement of $25,000 because it failed to perfect its lien and, therefore, the "total recovery" under Code § 65.2-313 equaled $25,000 ($25,000 – 0). The commission found that employer's responsibility for claimant's attorney's fees was limited to $7,500, the amount expended to obtain the settlement. Thus, the commission ruled as follows:

> [T]he employer's lien exceeds the $25,000.00 total recovery from the third-party settlement and further . . . that employer is entitled to pay 30 percent ($7500/$25000 = 0.30) of the claimant's future entitlements until such a time when the employer has paid 30 percent towards $25,000 in future entitlements. At that time, claimant will become entitled to full benefits.
>
> *  *  *  *  *  *  *
>
> Based on the plain language of [Code § 65.2-313], we find the reduction of future entitlements includes reduction of future medical benefits.

Based upon these findings, the commission entered the following award:

> Beginning May 20, 2004, the day after compensation was last paid, the employer shall pay weekly to the claimant $139.80 [$7,500 divided by $25,000, multiplied by $466],[1] representing the claimant's portion of the attorney's fees related to the third-party recovery. These payments shall continue for each week of temporary total disability benefits payable under the open award, until that award is terminated or suspended or the employer

---

[1] Claimant's temporary total disability rate based upon his November 28, 2001 award is $466 per week.

- 4 -

recovers $25,000, the total recovery from the third-party settlement, through offsets to disability and medical benefits.

As of May 20, 2004, the claimant remains entitled to medical benefits pursuant to Code § 65.2-603. However, he is entitled to 30 percent of his causally related medical expenses until the employer effects a recovery of the $25,000 settlement.

(Footnote added.)

The commission also denied claimant's claim for the cost of the hot tub installed at his home.

## Analysis

I.  Reduction of Future Compensation and Medical Benefits under Code § 65.2-313

Initially, we note that the parties agreed before the commission that the General Assembly's amendment to Code § 65.2-309, adding subsection (D), effective July 1, 2004, was not retroactive and was not applicable to this matter.[2] The parties and the commission analyzed and decided this case under the pre-July 1, 2004 versions of Code §§ 65.2-309, 65.2-310, and 65.2-313.

Claimant argues that prior to July 1, 2004, an employer was required to perfect its subrogation lien pursuant to Code § 65.2-310, and, thereafter, Code § 65.2-313 governed the calculation of the amount to be recouped by an employer out of future benefits. Claimant argues that where an employer failed to perfect its subrogation lien, as in this case, it waived all subrogation rights, even those listed in Code § 65.2-313, and that the commission erred in using

---

[2] Subsection D added to Code § 65.2-309, effective July 1, 2004, provides as follows:

If an injured employee, his personal representative, or a person acting on behalf of the injured employee receives the proceeds of the settlement or verdict and the employer's lien pursuant to subsection A has not been satisfied, the employer shall have the right to recover its lien either as a credit against future benefits or through a civil action against the person who received the proceeds.

- 5 -

Code § 65.2-313 to calculate a reduction in his future benefits under the pre-July 1, 2004

statutory scheme. Claimant argues the commission's holding was contrary to the Supreme

Court's holding in <u>Yellow Freight</u> and this Court's holding in <u>Hawkins</u>. We disagree.[3]

"Claimant raises a purely legal question on appeal. Although we defer to the commission

in its role as fact finder, we 'review questions of law *de novo*.'" <u>McKnight</u>, 43 Va. App. at 193,

596 S.E.2d at 575 (quoting <u>Rusty's Welding Serv., Inc. v. Gibson</u>, 29 Va. App. 119, 127, 510

S.E.2d 255, 259 (1999) (citation omitted)).

The issue before us is whether an employer, who did not perfect its subrogation lien

pursuant to Code § 65.2-310 prior to claimant's settlement of a third-party action, is entitled to

reduce payments of claimant's future compensation and medical benefits under Code § 65.2-313,

until employer recoups $25,000, the gross recovery obtained by claimant as a result of the

third-party settlement.

The pertinent part of the version of Code § 65.2-309 applicable to this case and in effect

before the July 1, 2004 amendment, provided as follows:

> A. A claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee, his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. . . .

---

[3] Claimant also argues that employer should be entitled to recoup only $14,564.36, because the circuit court disbursed a check in that amount to claimant solely as a result of the $25,000 settlement. Claimant sets forth the following disbursement of the $17,500 Interplead Funds: $2,960.77 to Medicare, $65 to Chickahominy, and $91.06 to him for the cost of service of process plus accrued interest, for net funds in interpleader of $14,564.36. Our review of the record does not show that claimant ever raised this specific argument before the full commission on review nor did the commission specifically consider those monetary figures. Accordingly, we will not consider this argument on appeal. <u>See</u> Rule 5A:18.

Code § 65.2-310, in effect at the same time, provided as follows:

> In any action by an employee, his personal representative or other person against any person other than the employer, the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of compensation paid and expenses for medical, surgical and hospital attention and supplies, and funeral expenses incurred by the employer under the provisions of this title and deduct therefrom a proportionate share of such amounts as are paid by the plaintiff for reasonable expenses and attorney's fees as provided in § 65.2-311; and, in event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such compensation and expenses of the employer, less said share of expenses and attorney's fees, so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any to the judgment creditor.

Code § 65.2-313 provides as follows:

> In any action or claim for damages by an employee, his personal representative or other person against any person other than the employer under § 65.2-310, or in any action brought, or claim asserted, by the employer under his right of subrogation provided for in § 65.2-309, if a recovery is effected, the employer shall pay to the employee a percentage of each further entitlement as it is submitted equal to the ratio the total attorney's fees and costs bear to the total third-party recovery until such time as the accrued post-recovery entitlement equals that sum which is the difference between the gross recovery and the employer's compensation lien. In ordering payments under this section, the Commission shall take into account any apportionment made pursuant to § 65.2-311.

> For the purposes of this section, "*entitlement*" means compensation and expenses for medical, surgical and hospital attention and funeral expenses to which the claimant is entitled under the provisions of this title, which entitlements are related to the injury for which the third-party recovery was effected.

In construing Code § 65.2-313, the Supreme Court, in the context of an employer's petition for reimbursement, has recognized that a circuit court that "undertook to apply the apportionment percentage to compensation benefits to be paid and medical expenses to be incurred in the future" pursuant to Code § 65.2-313 went beyond its jurisdiction. Hawkins, 255

Va. at 271, 497 S.E.2d at 843-44.  Rather, it is the commission that orders appropriate payments to be made taking into account the apportionment percentage.  Id.

This Court has recognized, in an opinion issued after Yellow Freight, that the purpose underlying Code § 65.2-313, similar to Code § 65.2-309, is "'to prevent an employee from acquiring two remedies for a single injury [-] one in tort against the third party tortfeasor, the other in contract under the Workmen's Compensation Act.'"  Emberton v. White Supply & Glass Co., 43 Va. App. 452, 457, 598 S.E.2d 772, 775 (2004) (quoting Gartman v. Allied Towing Corp., 467 F. Supp. 439, 441 (E.D. Va. 1979)).  In Emberton, this Court addressed the issue of whether an employer was entitled to receive a credit out of Emberton's third-party recovery against the payment of a medical bill that, although incurred prior to the settlement of the third-party action, had not been paid by the employer under Emberton's award of medical benefits.  We held that "the term 'employer's compensation lien,' as used in Code § 65.2-313, is comprised of payments actually made for the benefit of the employee."  Id. at 459, 598 S.E.2d at 776.  However, we recognized that "[b]ills incurred, but not paid, as a result of an employment-related injury fall outside the definition of 'employer's compensation lien' and, to the extent they remain the employer's responsibility, constitute 'further entitlements' within the meaning of Code § 65.2-313."  Id.  Thus, we awarded employer an apportioned credit against the unpaid hospital bill because it was a "further entitlement."  Id.

Here, the compensation and medical benefits for which employer sought a credit had not yet accrued when claimant received the distribution from the interpleader action.  Consistent with our holding in Emberton, those benefits fall "outside the definition of 'employer's compensation lien' and, to the extent they remain employer's responsibility, constitute 'further entitlements' within the meaning of Code § 65.2-313."  Id.

- 8 -

In McKnight, the employer had paid approximately $100,000 in benefits to the claimant, and had agreed to compromise its lien to $12,000. McKnight, 43 Va. App. at 192, 596 S.E.2d at 574. The claimant's total recovery in the third-party settlement was $36,000. After the $12,000 was deducted from the $36,000 recovery, the claimant received $24,000 from the third-party settlement. Id. at 194, 596 S.E.2d at 575. McKnight argued that he was entitled to the entire $24,000 without any credit to the employer because it compromised its lien. Id. This Court rejected that argument, indicating that it

> overlook[ed] the fact that the employer already [had] paid the claimant's indemnity and medical losses and gave claimant the benefit of a lien reduced by $88,000. Because he settled the third-party claim, the claimant received $24,000, less attorneys' fees and costs, to which the employer contributed. Not only does he have the present use of the money, he would not have to repay it if he recovers from his injury and can work before the offset is applied.

Id.

In construing Code § 65.2-313 in McKnight, we recognized the following:

> Code § 65.2-313 provides the method of determining an employer's offset against future entitlements when the third-party recovery is greater than the employer's compensation lien. . . . Code § 65.2-313 presumes that the employer is entitled to an offset, and addresses only how the parties are to calculate the attorneys' fees and costs for purposes of the offset. We must, therefore, look to the policy of the Act and the intent of the subrogation statutes to answer the question before us.
>
> Fundamentally, the policy of the Act is to allow the employee one remedy for his or her injury. The purpose of the subrogation section is to reimburse an employer for expenses incurred as a result of the negligence of a third party and to prevent an employee from obtaining a double recovery of funds already paid to him by his employer. "'[T]he express inclusion of the subrogation provision in Workmen's Compensation Acts prevents the employee from acquiring for a single injury two separate remedies — the one, in tort, against the third party tort-feasor, the other, in contract, under the Workmen's Compensation Act . . . .'" The third-party recovery is for the benefit of the employer up to the amount it has paid in indemnity benefits under the Act. Once a

recovery has been made, the employer is entitled to reimbursement for whatever amounts it has expended for the benefit of the injured employee. Otherwise, the employee acquires two remedies for a single injury — one in tort against the negligent third party, and the other under the Act.

Id. at 194-95, 596 S.E.2d at 576 (quoting Snead v. Unum Life Ins. Co. of Am., 35 F.3d 556, 556 n.1 (4th Cir. 1994)) (other citations omitted). Therefore, in McKnight, we held that "the employer is entitled to an offset against its future workers' compensation liability for the amount of the claimant's recovery, less costs, calculated pursuant to Code § 65.2-313." Id. at 196, 596 S.E.2d at 576.

Thus, consistent with Hawkins, Emberton, and McKnight and the fundamental purpose of the Act to allow an employee one remedy for his or her injury, we agree with the commission and hold that employer was entitled to reduce the amount paid to claimant toward each future entitlement pursuant to the formula set forth in Code § 65.2-313. The circuit court awarded employer no lien against the $17,500 in the interpleader action as an offset to the $194,785 already paid by employer to claimant under the Act. The benefits for which employer sought a credit had not yet accrued when claimant received the distribution of funds from the circuit court. Thus, those benefits constituted future entitlements for which employer was entitled to pay a reduced benefit pursuant to Code § 65.2-313. The commission correctly calculated pursuant to Code § 65.2-313 that employer was entitled to pay thirty percent ($7,500/25,000), towards claimant's future entitlements until it recovered $25,000, the total recovery from the third-party settlement, and thereafter claimant would be entitled to full benefits.

We find no merit in claimant's argument that Yellow Freight mandates a different result. The appeal in Yellow Freight

> involve[d] the statutory scheme embodied in Code §§ 65.2-309 and 65.2-310, parts of the Virginia Workers' Compensation Act, which together afford an employer certain rights to recover amounts paid to or on behalf of an injured employee from a third party

- 10 -

> responsible for the injury. . . . [T]he focus of the issue to be resolved [was] whether Yellow Freight, the employer, timely asserted its statutory rights as provided in this statutory scheme.

Yellow Freight, 266 Va. at 62, 580 S.E.2d at 813-14.  In Yellow Freight, the employer did not file a petition or motion to enforce its lien in the claimant's lawsuit against a third-party tortfeasor pursuant to Code § 65.2-310 until after the claimant executed a settlement agreement and release of the third-party tortfeasor.  Id. at 61, 580 S.E.2d at 813.  In addressing the narrow issue presented in Yellow Freight, the Supreme Court held that "to the extent that an employer has subrogation rights created by Code § 65.2-309 against the proceeds of a recovery from a third party responsible for an employee's injury, such rights must be perfected by adherence to the provisions of Code § 65.2-310 *when they are asserted under that statute*."  Id. at 63-64, 580 S.E.2d at 814-13 (emphasis added).  The Supreme Court further recognized that

> under Code § 65.2-309, the payment of workers' compensation benefits by an employer merely substitutes the employer in the place of the employee with respect to any right of recovery the employee may have against a third party to the extent of the employer's payment of such benefits.  However, the right of subrogation granted by this statute does not mature into an enforceable claim or lien unless, and until the right is perfected by the employer in accordance with the further provisions of this statute or those of Code § 65.2-310.

Id. at 64, 580 S.E.2d at 815.  The Supreme Court did not construe Code § 65.2-313 in Yellow Freight in the context of a claim for reimbursement by an employer against a claimant's future entitlement to compensation and medical benefits, as is involved in the instant case.

Accordingly, we find no error in the commission's decision allowing employer to reduce payments of claimant's future compensation and medical benefits pursuant to Code § 65.2-313 to thirty percent, until employer recoups $25,000, the gross recovery obtained by claimant as a result of the third-party settlement.

## II.  Hot Tub

Claimant bore the burden of proving that the hot tub he purchased and installed at his home in 1998 constituted reasonable and necessary medical treatment causally related to his compensable January 5, 1995 injury by accident.  Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us.  See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

In ruling that claimant failed to prove the home hot tub was reasonable and necessary treatment for his back condition, the commission found as follows:

> [C]laimant failed to present a contemporaneous prescription for the hot tub [purchased and installed in 1998] but submitted a recent opinion [rendered on May 24, 2004] from his treating physician that the hot tub was reasonable and necessary treatment.  The claimant stated that Dr. [Michael] Decker[, an anesthesiologist,] prescribed hot tub treatment approximately 35 or 40 miles from his house prior to recommending the home whirlpool.  The claimant did not show that whirlpool treatment is not available closer to his home, and the doctor did not provide any explanation of the necessity of the home hot tub.

Based upon the absence of a contemporaneous prescription for the hot tub in 1998 in Dr. Decker's medical records, no mention from Dr. Decker in his deposition about a hot tub or whirlpool prescription, the lack of any evidence that whirlpool treatment was not available close to claimant's home, and the lack of any medical evidence explaining why the hot tub was reasonable and necessary, we cannot say as a matter of law that claimant's evidence sustained his burden of proof.  Accordingly, we are bound by the commission's finding and will not disturb it on appeal.

For these reasons, we affirm the commission's decision.

Affirmed.