COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Fitzpatrick and Annunziata
Argued by Teleconference


MORAD EGHBAL
                                          OPINION BY
v.        Record No. 1128-96-4    JUDGE JERE M. H. WILLIS, JR.
                                       DECEMBER 17, 1996
BOSTON COACH CORPORATION
and
PACIFIC EMPLOYERS INSURANCE COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Rebecca Arch (Kathleen G. Walsh; Ashcraft &
            Gerel, on brief), for appellant.

            No brief or argument for appellees.


        Pursuant to Code § 65.2-313, the Workers' Compensation

Commission awarded Boston Coach Corporation (Boston Coach) an

offset of $57,239.82 against continuing and future liability to

Morad Eghbal under the Worker's Compensation Act.  On appeal, Mr.

Eghbal contends that the commission erred (1) in denying him the

right to file a written statement in support of his request for

review of the commission's award, and (2) in calculating the

amount of the offset due Boston Coach from the third-party

recovery.  We modify and affirm the award of the commission.

        Mr. Eghbal was injured in a job-related accident for which

Boston Coach accepted workers' compensation liability.  The

commission entered an appropriate award.  Thereafter, Mr. Eghbal

recovered $95,000 from the third-party who caused the accident.

In doing so, he incurred attorney's fees and expenses totaling

$35,398.73, equaling 37.26 percent of the total third-party

recovery.   Prior to the third-party recovery, Boston Coach had paid Mr. Eghbal $37,760.18 in benefits.   From the third-party recovery, it was reimbursed that amount, less 37.26 percent for recovery costs, pursuant to Code §§ 65.2-309 and 65.2-310.

By letter of January 18, 1996, counsel for Mr. Eghbal informed the commission of the amount and distribution of the third-party recovery and requested that Mr. Eghbal's award be modified to reflect Boston Coach's right of offset and to require Boston Coach to pay 37.26 percent of future payments.   On February 7, 1996, the commission entered an award, which provided in pertinent part:

> Pursuant to § 65.2-313, Code of Virginia, the employer/carrier is entitled to a credit in the amount of $57,239.82 against its liability for additional compensation payments and medical expenses, after which its responsibility to make such payments shall resume.
>
> The claimant remains entitled to a reimbursement of attorney fees and expenses at the rate of 37 percent of any additional compensation entitlements as they are incurred.

Mr. Eghbal requested full commission review of the February 7, 1996 award, "tak[ing] exception to Deputy paragraph 2 of the Award in which the employer/carrier is entitled to a $57,239.82 credit against its liability for additional compensation payments and medical expenses."   By opinion dated April 2, 1996, the full commission affirmed the February 7, 1996 award.   On April 10, 1996, Mr. Eghbal moved the commission to vacate its April 2, 1996 opinion on the ground that he had been denied the opportunity to file a written statement of position.

By letter dated April 16, 1996, the commission refused to vacate the April 2, 1996 opinion.

## I.

Mr. Eghbal first contends that the commission erred in denying him the opportunity to submit a written statement in support of his request for review. He cites Rule 3 of the Rules of the Commission, relating to Post-hearing Procedures, which provides in pertinent part:

> **3.2 Written Statements.** The Commission will advise the parties of the schedule for filing brief written statements supporting their respective positions. The statements shall address all errors assigned, with particular reference to those portions of the record which support a party's position.

The commission held that Rule 3.2 applies "to reviews of opinions and decisions made by deputy commissioners," as distinguished from award adjustments based upon changes in condition. Noting that the decision on review came from the Claims Department, the commission held that in such cases its rules provide for review on the record, without further evidence, without argument, and without written statements of position.

Rule 1.6 of the Rules of the Commission, relating to changes in condition, provides for review on the record, without further evidence and without oral argument. Rule 1.6 requires that the letter requesting review "should specify each determination of fact and law to which exception is taken." Mr. Eghbal's request for review appeared to meet that requirement.

[T]his Court [has] recognized that the [Workers'

Compensation Commission], having the right to make and enforce its rules, should also have the opportunity to construe its own rules. Consequently, our review is limited to a determination whether the commission's interpretation of its own rule was reasonable.

Classic Floors, Inc. v. Guy, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989) (citations omitted).

A "change in condition" is defined as "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation." Code § 65.2-101. Mr. Eghbal's third-party recovery created a change in the conditions under which he was awarded compensation. It affected his right to compensation and the amount and duration of his compensation. Thus, his third-party recovery created a change in condition and the commission properly applied its Rule 1.6.

## II.

Code § 65.2-313 provides, in pertinent part:
[I]f a recovery is effected, the employer shall pay to the employee a percentage of each further entitlement as it is submitted equal to the ratio the total attorney's fees and costs bear to the total third-party recovery until such time as the accrued post-recovery entitlement equals that sum which is the difference between the gross recovery and the employer's compensation lien.

Mr. Eghbal argues that the terms "total third-party recovery" and "gross recovery," employing different wording, must have different meanings. He argues that "total third-party recovery" means the total amount received from the third-party

- 4 -

wrongdoer, in this case $95,000, and that "gross recovery" means the amount of money that he actually received from the third-party recovery, after satisfaction of Boston Coach's lien and payment of his share of recovery expenses.  He argues that this figure equals $32,179.16.  He appears to argue that from this figure should be deducted the amount of Boston Coach's lien, to produce the net amount available to Boston Coach as offset.  We find this calculation unpersuasive.

Mr. Eghbal offers no authority for his definition of "gross recovery."  We think that his definition is plainly erroneous.  It describes "net recovery," rather than "gross recovery."  "[T]otal . . . recovery" and "gross recovery," in their common usage, are synonymous.  Each term defines the total amount recovered, before offsets and expenses.  Thus defined, "total . . . recovery" and "gross recovery" are the same and, in this case, equal $95,000.  This interpretation of Code § 65.2-313 is consistent with the plain purpose of the statutory scheme providing the employer an offset for a third-party recovery.

By accepting Mr. Eghbal's workers' compensation claim, Boston Coach became subrogated to Mr. Eghbal's rights against the third-party wrongdoer to the extent of compensation benefits paid.  See Code § 65.2-309.  Upon realization of the third-party recovery, Boston Coach was entitled to reimbursement for benefits that it had paid, less its proportionate share of recovery costs.  See Code §§ 65.2-310 and 65.2-311.  Boston Coach was entitled to

the suspension of its liability for the payment of further benefits until the third-party recovery was exhausted. However, it remained liable to Eghbal for the recovery costs of each increment of offset, as it accrued. See Code § 65.2-313. The commission's award accomplished this. From the total or gross third-party recovery of $95,000 was subtracted $37,760.18, the employer's lien for previously-paid benefits[1]. The difference, which the commission correctly calculated at $57,239.82, is the offset against future compensation liability to which Boston Coach is entitled.

As each increment of Mr. Eghbal's future entitlement accrues, Boston Coach will be entitled to an offset. However, as each increment accrues, Boston Coach will reimburse Mr. Eghbal for the recovery costs attributable to that increment. Thus, at any given time, Boston Coach will have received its full entitlement from the third-party recovery and Mr. Eghbal will have been reimbursed for the recovery costs attributable to the benefit received by Boston Coach. The proceeds of the third-party recovery will remain in Mr. Eghbal's hands, as his property, until such time as they are charged to Boston Coach's offset. To the extent that those proceeds remain Mr. Eghbal's property, he has been charged with their recovery costs.

---

[1]When Boston Coach was reimbursed $37,760.18 for benefits that it had previously paid, 37.26 percent of that amount, representing recovery costs, was deducted from the reimbursement. Mr. Eghbal was thereby reimbursed his costs relating to that segment of the recovery.

However, as each increment of offset accrues to the benefit of Boston Coach, Boston Coach will reimburse Mr. Eghbal the recovery costs attributable to that increment.

The commission correctly structured Boston Coach's right of indemnity and its obligation to reimburse recovery costs to Mr. Eghbal. However, it erred in requiring reimbursement of 37 percent "of any additional compensation entitlements as they are incurred." The figure should be 37.26 percent. This error is small, but over the possible course of offset, it could accrue into a significant sum. The error involves future calculations and payments and is easily rectified. The commission should modify its award accordingly.

The award of the commission, as modified, is affirmed.

<u>Affirmed</u>.