COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Clements
Argued at Salem, Virginia


WILLIE CARL EMBERTON, SR.

                                                        OPINION BY
v.       Record No. 2995-03-3              JUDGE ROSEMARIE ANNUNZIATA
                                                        JULY 6, 2004

WHITE SUPPLY & GLASS COMPANY AND
  VIRGINIA COMMERCE GROUP
  SELF-INSURANCE ASSOCIATION


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Wanda A. Dotson (Chandler, Franklin, & O'Bryan, on briefs), for
              appellant.

              Linda M. Gillen (Blair Law Offices, on brief), for appellees.


        Willie Carl Emberton, Sr. (employee) appeals from a decision of the Workers'

Compensation Commission awarding White Glass & Supply Company (employer) a credit of

$6,930 against a $14,503.75 hospital bill incurred by Emberton.  Emberton incurred the hospital

bill before he effected a third party recovery, but, at the time of the third-party recovery, the

employer had not paid the bill.  For the following reasons, we affirm.

I.  Background

        Emberton was injured in a work-related car accident on September 27, 1997 and filed a

claim for workers' compensation benefits.  The commission awarded him lifetime medical

benefits.

        On June 23, 2000, Emberton underwent surgery at Mary Washington Hospital, incurring

a $14,503.75 bill for services provided by the hospital.  The bill was sent to employer's

insurance carrier on July 7, 2000.  Although numerous discussions about the bill took place

between the hospital and employer's insurance carrier from July 2000 to January 2001, the bill went unpaid. A bill was also sent to Emberton every month from August 2000 to August 2001.

In the spring of 2001, the third party partially responsible for Emberton's September 27, 1997 accident offered to settle Emberton's claim against him for $100,000. Emberton's attorneys subsequently conducted negotiations with employer's insurance carrier regarding the amount of the third party settlement employer would accept in satisfaction of its subrogation rights. The parties negotiated a three-way split of the settlement with employer, i.e. one-third of the settlement amount would be paid to Emberton, one-third to Emberton's attorneys, and one-third to employer. Emberton and employer also agreed to split the costs of the litigation. The attorneys who negotiated the settlement were unaware that the hospital bill remained unpaid.

On July 13, Emberton's attorney sent a letter to employer's attorney outlining the terms of the agreement. The agreement provided:

> It is my understanding that the worker's compensation carrier will accept a three way split and will pay a pro-rata share of Mr. Emberton's litigation costs, which are currently in the amount of $3,315.27. Mr. Emberton's future rights to worker's compensation benefits in the form of continuing medical care will remain intact with the exception that the worker's compensation carrier will obtain a credit amounting to 1/3 of the third party settlement.

Employer responded to the letter on July 16, 2001 manifesting its assent to the letter's recitation of the agreement. The third party subsequently paid the settlement amount. On August 16, 2001, employer's attorneys received $33,333 in attorney's fees plus $3,315.27 for litigation costs. Emberton and employer each received $31,675.70.

At the time of the settlement, employer had paid Emberton $89,000 in benefits not including the hospital bill, which remained unpaid.

On December 26, 2001, Emberton filed a claim with the workers' compensation commission alleging that the employer was responsible for payment of the medical bill in full.

The commission denied Emberton's claim, finding that the employer was entitled to a credit of $6,930 to be applied against the unpaid hospital bill under Code § 65.2-313.[1] This appeal followed.

## II. Analysis

On appeal, Emberton contends that the commission's decision ignored the parties' agreement which, according to Emberton, by its "plain language . . . dictates that the past medical care at [the hospital] is not 'continuing medical care.'" Emberton also contends the commission erred in treating the hospital bill as a "further entitlement" under Code § 65.2-313 and that, as a consequence, employer is responsible for payment of the entire bill without any offset as mandated by that code section. Emberton argues further that the commission erred in not considering whether the third party settlement was in the best interests of the claimant pursuant to Code § 65.2-701. Emberton finally contends that the employer should be estopped from denying it is responsible for the hospital bill. For the following reasons, we affirm.

### A. The Agreement Between Emberton and Employer

Emberton argues that the commission ignored the "plain language" of his agreement with employer. He contends that the agreement clearly provides that the employer is responsible for past medical care, which care would include the unpaid hospital bill. We disagree.

The relevant portion of the agreement provides:

> Mr. Emberton's future rights to worker's compensation benefits in the form of continuing medical care will remain intact with the exception that the worker's compensation carrier will obtain a credit amounting to 1/3 of the third party settlement.

By its plain terms, the agreement does not contemplate past medical expenses incurred; it is limited to "continuing medical care." See Standard Banner Coal Corp. v. Rapoca Energy Co.,

---

[1] Emberton does not contest the formula used by the commission to determine the amount of employer's credit.

265 Va. 320, 325, 576 S.E.2d 435, 437 (2003) (noting that it is the function of the courts to construe a contract in accordance with its plain meaning and to be careful not to make a contract for the parties). We therefore cannot say that the parties had a "meeting of the minds" as to past medical expenses incurred. See Jones v. Peacock, 267 Va. 16, 20, 591 S.E.2d 83, 87 (2004) ("A contract involves a bilateral exchange, a meeting of the minds, and an understanding of obligations undertaken."). Accordingly, we find that the parties' agreement does not control the dispute here.

B. Hospital Bill as a Further Entitlement or Part of Employer's Compensation Lien

Emberton also argues that the commission erred in treating the hospital bill as a "further entitlement" under Code § 65.2-313—entitling the employer to an offset against its payment obligation based on the ratio of the attorney's fees to the settlement. He contends that the employer knew the bill was unpaid at the time of the settlement and that, although the bill had not been paid, it was part of the employer's compensation lien. We disagree.

Code § 65.2-309 provides subrogation rights to an employer in the event an employee to whom it is liable for workers' compensation benefits recovers damages from a third party for his compensable injury. This code section "was designed to prevent an employee from acquiring two remedies for a single injury[—]one in tort against the third party tortfeasor, the other in contract under the Workmen's Compensation Act." Gartman v. Allied Towing Corp., 467 F. Supp. 439, 441 (E.D. Va. 1979). In other words, "the purpose of [this section] is to reimburse an employer who is compelled to pay compensation as the result of the negligence of a third party and to prevent an employee from obtaining a double recovery of funds." Tomlin v. Vance Int'l, Inc., 22 Va. App. 448, 452, 470 S.E.2d 599, 601 (1996).

Code § 65.2-313 reflects a similar purpose. It contemplates those circumstances where a third party recovery is obtained that exceeds the amount of the employer's compensation lien.

McKnight v. Work Env't Assocs. & Travelers, ___ Va. App. ___, ___, ___ S.E.2d ___, ___,

2004 Va. App. Lexis 249, *7 (2004). It provides:

> In any action or claim for damages by an employee, his personal representative or other person against any person other than the employer under § 65.2-310, or in any action brought, or claim asserted, by the employer under his right of subrogation provided for in § 65.2-309, if a recovery is effected, the employer shall pay to the employee a percentage of each further entitlement as it is submitted equal to the ratio the total attorney's fees and costs bear to the total third-party recovery until such time as the accrued post-recovery entitlement equals that sum which is the difference between the gross recovery and the employer's compensation lien. In ordering payments under this section, the Commission shall take into account any apportionment made pursuant to § 65.2-311.
>
> For the purposes of this section, "entitlement" means compensation and expenses for medical, surgical and hospital attention and funeral expenses to which the claimant is entitled under the provisions of this title, which entitlements are related to the injury for which the third-party recovery was effected.

Code § 65.2-313. Thus, although the employer is still obligated to pay "further entitlements," a

portion of its payments of a claimant's "further entitlements" may be offset as a credit, based on

the ratio of attorney's fees to the settlement, until "post-recovery entitlement equals that sum

which is the difference between the gross recovery and the employer's compensation lien." Id.;

see also Eghbal v. Boston Coach Corp., 23 Va. App. 634, 638-39, 478 S.E.2d 732, 734 (1996).

Emberton's argument that the hospital bill cannot be deemed a "further entitlement" and

subject to the reach of Code §65.2-313 is without merit. We conclude that the term "further

entitlement" means those expenses which are not and cannot be considered part of the

employer's compensation lien at the time of the third-party recovery.

It is well established that the employer's compensation lien is defined in terms of the

actual payment of benefits. The Virginia Supreme Court has held that it is "*the payment* of

workers' compensation benefits by an employer . . . [that] substitutes the employer in the place

of the employee with respect to any right of recovery the employee may have against a third

party *to the extent of the employer's payment of such benefits*." Yellow Freight Sys., Inc. v. Courtaulds Performance Films, Inc., 266 Va. 57, 64, 580 S.E.2d 812, 815 (2003) (emphasis added). Similarly, in Hawkins v. Commonwealth/Southside Va. Training Center, 255 Va. 261, 497 S.E.2d 839 (1998), the Supreme Court held that Code § 65.2-313 "contemplates a situation where . . . the employee has recovered from a third-party tort-feasor a sum larger than the total of the *past payments of benefits*." Id. at 269, 497 S.E.2d at 843 (emphasis added). Indeed, "[a]s a general rule, before a surety is entitled to be subrogated to the rights of the creditors against the principal debtor, he must have *actually paid or satisfied the debt*." 18 M.J. Subrogation § 7, at 14 (1996) (emphasis added). Thus, the term "employer's compensation lien," as used in Code § 65.2-313, is comprised of payments actually made for the benefit of the employee. Bills incurred, but not paid, as a result of an employment-related injury fall outside the definition of "employer's compensation lien" and, to the extent they remain the employer's responsibility, constitute "further entitlements" within the meaning of Code § 65.2-313.

Here, the employer's insurance carrier had not paid the hospital bill prior to the settlement. Employer's lien, therefore, did not encompass the unpaid hospital bill.[2] The third party recovery amount of $100,000 thus exceeded employer's $89,000 compensation lien. Under Code § 65.2-313, employer was entitled to an apportioned credit against the unpaid hospital bill because it is a "further entitlement."

We note that this result comports with the overall purpose of affording subrogation rights to the employer, i.e. the reimbursement of employer and the prevention of double recovery to claimants. See Tomlin, 22 Va. App. at 452, 470 S.E.2d at 601; see also 6 Arthur Larson, Worker's Compensation Law § 117.01[5] ("[T]he correct holding is . . . that the excess of

---

[2] Emberton conceded at oral argument that if this Court determined that the hospital bill was not a part of employer's compensation lien, the commission's decision should be affirmed.

third-party recovery over past compensation *actually paid* stands as a credit against future liability of the carrier.").

We also note that our decision comports with the formula used in Code § 65.2-313 to determine the amount of employer's offset. Employer's base credit, which is "the difference between the gross recovery and the employer's compensation lien," hinges on the amount of employer's compensation lien. Thus, by its use of the term "compensation lien," the formula accounts for past payments made to the claimant. Those benefits to which claimant is entitled, but that employer has not paid, are taken into account by the term "further entitlement."

We are mindful of Emberton's concern that the conclusion we have reached may provide employers an incentive to delay payment of medical expenses or to hide such expenses until after a third-party recovery is effected. However, acts done in bad faith or unreasonably are factors the commission may consider when adjudicating the issue. See Washington v. United Parcel Service of America, 267 Va. 539, 546, 593 S.E.2d 229, 232 (2004) (noting that the commission has the power "'to do full and complete justice in each case'" (quoting Harris v. Diamond Const. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946))). Here, no such allegations were made by the employee or found by the commission.[3] Cf. Dunrite Transmission v. Sheetz, 18 Va. App. 647, 650, 446 S.E.2d 473, 474 (1994) (affirming commission's decision that employer could not profit from its delay even though no bad faith was found).

C. Best Interests Under Code § 65.2-701

Emberton further contends that the commission erred by failing to consider whether the agreement between the parties was in his best interests pursuant to Code § 65.2-701. We reject this contention because Code § 65.2-701 is not applicable to the circumstances of this case.

---

[3] In fact, the record does not reflect why the hospital bill went unpaid.

Code § 65.2-701 provides:

> If after injury or death, the employer and the injured employee or his dependents reach an agreement in regard to compensation or in compromise of a claim for compensation under this title, a memorandum of the agreement in the form prescribed by the Commission shall be filed with the Commission for approval. The agreement may be prepared by the employee, the employer or the compensation carrier. If approved, the agreement shall be binding, and an award of compensation entered upon such agreement shall be for all purposes enforceable as provided by § 65.2-710. If not approved, the same agreement shall be void. Such agreement may be approved only when the Commission, or any member thereof, is clearly of the opinion that the best interests of the employee or his dependents will be served thereby.

Here, the parties did not reach an agreement regarding the unpaid hospital bill. See *supra* Part II.A. This appeal only concerns the rights and obligations of employer and employee under Code § 65.2-313. What rights and obligations the employer and employee have under this statutory provision is a purely legal question that falls outside the parameters of the parties' agreement. We therefore find that Code § 65.2-701 is not applicable to the case at bar.

## D. Employer Is Not Estopped

Emberton finally contends that the employer is estopped from denying payment of the hospital bill because it was aware of its existence at the time of the settlement. Although the commission found that the employer's insurance company representative was aware that the bill was unpaid, it also found that Emberton was aware of the unpaid hospital bill. The commission further found that "the attorneys who negotiated the compromise of the third party action were *not aware* of the unpaid" hospital bill. (Emphasis added). Emberton concedes in his brief that these findings of fact are binding on this Court, and he further concedes that the employer did not act in bad faith. Thus, there was a failure by both responsible parties to inform their respective negotiators of the unpaid hospital bill. We find no error in the commission's refusal to find the

- 8 -

employer was estopped from denying payment of the hospital bill when the oversight was equally attributable to Emberton.

## III. Conclusion

For the foregoing reasons, we affirm the decision of the commission.

<u>Affirmed.</u>